# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 10-CV-0482 (JFB)(ARL)

————————————

KEITH POOLER,

Plaintiff,

VERSUS

HEMPSTEAD POLICE DEPARTMENT, P.O. KAROL BARNES, P.O. ANTHONY ALMANZAR, KATHLEEN RICE, STATE OF NEW YORK, NASSAU COUNTY SHERIFF'S DEPARTMENT,

Defendants.

————————————

**MEMORANDUM AND ORDER**
September 14, 2012

————————————

Joseph F. Bianco, District Judge:

*Pro se* plaintiff Keith Pooler ("Pooler" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1983[1] ("Section 1983") against the Hempstead Police Department, P.O. Karol Barnes ("Barnes"), P.O. Anthony Almanzar ("Almanzar"),[2] District Attorney Kathleen Rice ("DA Rice"), the State of New York ("New York")[3] and the Nassau County Sheriff's Department[4] ("Nassau

---

[1] Plaintiff does not specifically state that he is bringing his complaint pursuant to Section 1983. However, the Court construes plaintiff's claims as arising pursuant to Section 1983.

[2] Throughout plaintiff's submissions, plaintiff refers to Police Officer Anthony Almanzar as Almanzar, Almanzer and Almarez. The County defendants refer to Police Officer Almanzar as Almazar in their 56.1 statement. The Court will refer to the officer as Officer Almanzar.

[3] At a telephone conference held before the undersigned on July 8, 2010, plaintiff withdrew his claims against the State of New York. (Minute Entry, July 8, 2010, ECF No. 32.)

[4] As a threshold matter, the Court notes that the Nassau County Sheriff's Department is an "administrative arm[ ]" of the municipal entity, the County of Nassau, and thus lacks the capacity to be sued as a separate entity. *See, e.g., Caidor v. M & T Bank*, No. 05-CV-297, 2006 WL 839547, at *2, 2006 U.S. Dist. LEXIS 22980, at *6-7 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))). As such, the Court will construe plaintiff's complaint as lodged against the County of Nassau.

County") (collectively the "defendants"). Construing plaintiff's complaint liberally, plaintiff brings his claims against DA Rice and Nassau County (the "County defendants") for false arrest, malicious prosecution, and violation of his due process rights,[5] and his claims against the Hempstead Police Department,[6] Barnes, and Almanzar (the "Village defendants") for false arrest and excessive force.

The County defendants and the Village defendants separately moved for summary judgment. For the reasons set forth below, the Village defendants' motion for summary judgment is granted in part and denied in part. Specifically, the Court denies the Village defendants' motion as it relates to plaintiff's claim against Almanzar and Barnes for use of excessive force when plaintiff was arrested. The Village defendants' motion is granted on all other claims. Additionally, the Court grants the County defendants' motion in its entirety.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' affidavits and exhibits, and from the defendants' Rule 56.1 Statement of Facts.[7] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[8]

Plaintiff is an inmate serving a definite term of nine years at Southport Correctional Facility, located at Pine City, New York.

---

[5] It is unclear whether plaintiff has also brought his claim for excessive force against Nassau County. However, to the extent plaintiff has attempted to assert such a claim, that claim against the County (as well as any other municipal liability claim under Section 1983 against the County) cannot survive summary judgment for the reasons discussed *infra*.

[6] It is unclear whether plaintiff has brought his claim for excessive force against the Hempstead Police Department. However, to the extent plaintiff has attempted to assert such a claim, that claim against the Hempstead Police Department (as well as any other municipal liability under Section 1983 claim against the Hempstead Police Department) cannot survive summary judgment for the reasons discussed *infra*.

[7] The Court notes that plaintiff has filed a 56.1 Statement, but has not contested the defendants' 56.1 Statements of facts, in violation of Local Civil Rule 56.1. Generally, a party's "'failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in plaintiff and defendants' Rule 56.1 Statements that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff has failed to submit a Local Rule 56.1 Counter Statement in response to the defendants' 56.1 Statements, the Court has carefully reviewed the evidence submitted in both parties' moving papers.

[8] In addition, although the defendants' Rule 56.1 Statements contain specific citations to the record to support its statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record, when utilizing the 56.1 Statements for purposes of this summary of facts.

(County Defs.' 56.1 ¶ 1.) On June 4, 2009, at approximately 2:46 a.m., in front of 58 Main Street, Hempstead, New York, plaintiff approached Jose Alvarez ("Alvarez") and intentionally punched him in the face causing serious pain and injury and stole sixty dollars. (*Id.* ¶ 4.) Alvarez described the man as a black male approximately "40 years old, 5FT 10 inch tall, 230 LBS, wearing dark clothing." (*See* Pl.'s 56.1 ¶ 4; Pl.'s Ex. C, Alvarez's Supporting Declaration dated June 4, 2009.)

At approximately 1:30 a.m. on June 13, 2009, Alvarez was driving his taxi in front of Main Street, Hempstead, New York when he observed plaintiff. (County Defs.' 56.1 ¶ 5.) Alvarez followed the plaintiff, telephoned the Hempstead Police Department, and remained on the phone with the 911 operator as he followed plaintiff. (*Id.*) The officers arrived when plaintiff was near the corner of West Columbia Street and Main Street, Hempstead, New York. (*Id.*) Alvarez identified plaintiff as the person who assaulted and robbed him on June 4, 2009. (*Id.* ¶ 6.) Officer Almanzar attempted to stop plaintiff and plaintiff fled. (*Id.* ¶ 7.) Pooler alleges that Almanzar and Barnes, who participated in the Arrest both macked him during the arrest. (*See* Pl.'s 56.1 ¶ 17; Pl.'s Ex. P.) However, Barnes and Almanzar assert that "[t]he plaintiff was not punched, kicked or assaulted in anyway." (*See* Village Defs.' Amended 56.1 ¶ 6.)

At approximately 2:26 a.m. on June 13, 2009, plaintiff was charged and processed for the commission of Robbery in the Second Degree under Penal Law § 160.10-2A and, at approximately 7:15 a.m., plaintiff was transferred to the Hempstead Police Department headquarters, located at 1490 Franklin Avenue, Mineola, New York, for additional processing. (County Def.'s 56.1 ¶ 8-9.) On the Police Department "Physical Condition of Defendant Questionnaire," plaintiff indicated that his "back hurt" and that he "fell down" and the desk officer remarks indicate that "Subject Appears fit, request to see doctor for back pain." (Pl.'s Ex. G Physical Condition of Defendant Questionnaire dated June 13, 2009.) Plaintiff alleges that he was dropped on his lower back with handcuffs, which caused severe pain and that, when he requested to see a doctor, he was brought to N.C.M.C. (Pl.'s 56.1 Statement ¶ 8.)

On June 29, 2009, the Grand Jury returned an indictment charging plaintiff with Robbery in the Second Degree, in violation of Section 160.10-2A of the New York State Penal Law, Robbery in the Third Degree in violation of Section 160.05 of the New York Penal Law, and Assault in the Third Degree in violation of Section 120.00-1 of the New York Penal Law. (County Def.'s 56.1 ¶ 10.) On January 20, 2010, plaintiff was found guilty of Robbery in the Second Degree and Assault in the Third Degree after a jury trial. (*Id.* ¶ 11.)

B.    Procedural History

Plaintiff commenced this action on February 3, 2010 and moved for leave to proceed *in forma pauperis*. The Court granted plaintiff's motion to proceed *in forma pauperis* on February 5, 2010. This case was consolidated with plaintiff's case filed under docket number 10-cv-1497 on April 28, 2010. On May 21, 2010, plaintiff's case filed under docket number 10-cv-2282 was consolidated with this action.

On June 23, 2010, defendant New York State requested a pre-motion conference. A conference was held on July 8, 2010, and

plaintiff withdrew his claims as to New York State.

By letters dated October 10, 2011, the County defendants and the Village defendants requested a pre-motion conference in anticipation of their motions for summary judgment. By Order dated October 13, 2011, the Court waived the pre-motion conference requirement and set a briefing schedule. On November 14, 2011, the County defendants filed their motion for summary judgment. The Village defendants also filed their motion for summary judgment on November 14, 2011. Plaintiff filed his opposition to the motions on December 12, 2012.[9] The County defendants filed their reply on December 20, 2011, and the Village defendants filed their reply on December 28, 2012. The plaintiff submitted a rebuttal to defendants' replies on January 6, 2011.[10] The Court has fully considered the submissions of the parties.

## II.  STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility

---

[9] Plaintiff's submission is titled "Memorandum of Law In Support of Plaintiff Opposes Motion for Summary Judgment." Within the document, plaintiff indicates that he has included a Notice of Motion for Summary Judgment. However, upon review of plaintiff's submission, it is clear that plaintiff is not intending to move for summary judgment and his submission was intended to be an opposition to the defendants' motions. Accordingly, the Court will construe plaintiff's submission as an opposition to the defendants' motions. Moreover, plaintiff has failed to provide page numbers. Thus, the Court will refer to the page numbers assigned by ECF when citing to plaintiff's opposition.

[10] Plaintiff also made a "request for a certificate of default" as against the Nassau County Sheriff's Department and Kathleen Rice on June 25, 2012. The County defendants responded on July 3, 2012. Plaintiff makes this application because the County defendants provided the Court with an additional copy of Exhibit J (Incorporated Village of Hempstead Police Department 911 Call recordings for June 4, 2009 and June 13, 2009) on or about June 6, 2012. (Pl.'s Request for Certificate of Default Judgment, 2.) Plaintiff claims that "Summary Judgment has expired December 28, 2011" and that "The ORDER was final

by Judge Joseph F. Bianco anything after that ORDER is a 'default judgment.'" (Pl.'s Request for Certificate of Default Judgment, 2.) First, plaintiff's understanding is incorrect. December 28, 2011 was the date in which defendants were to submit their replies, and defendants filed by that date. It should also be noted that plaintiff filed his "rebuttal" after December 28, 2011. However, due to administrative error on the part of the Court, the original submission of the County Defendants' Exhibit J was misplaced, and thus, the Court merely requested an additional courtesy copy of Exhibit J. In short, the County defendants have not defaulted in any way, nor have they failed to comply with the Court order. Accordingly, plaintiff's request is denied.

assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III.  DISCUSSION

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

### A.  *Monell* Claim against Nassau County

The County defendants argue that plaintiff cannot establish a *Monell* claim under Section 1983 against Nassau County based upon any of the alleged constitutional violations because plaintiff fails to allege, or provide evidence of, the personal involvement of supervisory officials, and because plaintiff fails to allege, or provide any purported constitutional violations, resulting from a municipal policy practice and or custom. As set forth below, this Court agrees.

Under *Monell v. Department of Social Services of the City of New York*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. 658, 694 (1978); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a

deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691; *see also Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior."); *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (quoting 42 U.S.C. § 1983)).

In this case, plaintiff made no allegations regarding a municipal policy, practice or custom in his complaint. Moreover, in plaintiff's memorandum in opposition to the summary judgment motions, plaintiff has only made conclusory allegations of a municipal policy, practice and/or custom. For example, plaintiff argues that "Nassau County and Hempstead Police Department, has permitted, tolerated and even encouraged a patter[n] and practice of unjustified, unreasonable and illegal abuse and arrest of plaintiff by P.O. Anthony [Almanzar] #1179 and P.O. Karol Barnes #1146 of the County wrongful detention of the plaintiff." (Pl.'s Opp. Br. at 49.) Plaintiff then proceeds to detail the individual acts of Barnes and Almarez on the date of his arrest. (*Id.*) Thus, plaintiff's conclusory statement of a policy or practice is not sufficient to survive summary judgment.

Accordingly, summary judgment is warranted as to Nassau County.

B.    *Monell* Claim against the Village of Hempstead

To the extent that the plaintiff also attempts to assert a *Monell* claim against the Village of Hempstead, that claim also cannot survive summary judgment. The Village defendants do not argue that the Section 1983 claims against the Hempstead Police Department must be dismissed because plaintiff failed to plead a municipal policy, practice or custom that resulted in constitutional violations. However, like the Nassau County Sheriff's Department, the Hempstead Police Department is an "administrative arm" of the Village of Hempstead. *See, e.g.*, *Caidor*, 2006 WL 839547, at *2, 2006 U.S. Dist. LEXIS 22980, at *6-7. Thus, the Court liberally construes the complaint to be asserted against the Village of Hempstead. However, as discussed *supra*, plaintiff would need to allege, and have evidence, that his constitutional rights were violated pursuant to a municipal policy, practice or custom in order for a *Monell* claim against the Village to survive summary judgment. *See*, *Middleton v. U.S.*, 10-cv-5067 (JFB) (ARL), 2012 WL 394559, at *4 (E.D.N.Y. Feb 7, 2012) (adopting report and recommendation) ("[T]o the extent plaintiff

attempts to state a cause of action under 42 U.S.C. § 1983 against the Village of Hempstead and the Hempstead Police Department, she fails to do so because she has not alleged that her constitutional rights were violated pursuant to a municipal policy, practice, or custom.") Here, as with Nassau County, there are no allegations (or evidence) that support a municipal liability claim against the Village. Accordingly, plaintiff's claims against the Village of Hempstead (including the Hempstead Police Department) cannot survive a summary judgment motion.

### C. False Arrest and Malicious Prosecution[11]

Plaintiff alleges that defendants violated his rights pursuant to the Fourth Amendment because he was falsely arrested and maliciously prosecuted. Both the Nassau County defendants and the Village defendants argue that, because there was probable cause to arrest Pooler, and because plaintiff was convicted of the underlying crime, plaintiff's false arrest claim must be dismissed. In addition, the defendants argue that plaintiff's malicious prosecution claim is also without merit because plaintiff was convicted of the underlying crime. This Court agrees and finds that the false arrest and malicious prosecution claims cannot survive summary judgment because of his conviction for the underlying offense.

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007). Malicious prosecution claims under § 1983 also require that there "'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Conte v. Cnty. of Nassau*, 06-CV-4746 (JFB)(ETB), 2008 U.S. Dist. LEXIS 25694, 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

In *Heck v. Humphrey*, 512, U.S. 477 (1994), the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily

---

[11] The County defendants argue that plaintiff's claim that the County defendants violated his procedural due process rights, by falsely charging him with a crime, should be dismissed because the claim is based on the same set of facts as his false arrest and malicious prosecution claims and should be subsumed into his Fourth Amendment Claim. (County Def.'s Br. at 4 (citing *Osuna v. City of New York*, 08-Civ-4759, 2009 U.S. Dist. LEXIS 66282, at * 16-17 (S.D.N.Y. Jul. 30, 2009).) This Court agrees and, as set forth *infra*, analyzes plaintiff's allegations under the Fourth Amendment. In any event, even as a separate Section 1983 claim, the due process claim also cannot survive summary judgment under *Heck v. Humphrey*, 512 U.S. 477 (1994).

would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)). Thus, pursuant to

*Heck*, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 U.S. Dist. LEXIS 33290, 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction. . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *cf. Jovanovic v. City of N.Y.*, No. 04 Civ. 8437 (PAC), 2006 U.S. Dist. LEXIS 59165, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

In the instant case, plaintiff claims that he was falsely arrested on June 13, 2009. On June 29, 2009, the Grand Jury returned an indictment accusing plaintiff of robbery in the Second Degree, in violation of Section 160.10-2A of the New York State Penal Law, robbery in the Third Degree in violation of Section 160.05 of the New York Penal Law, and Assault in the Third Degree in violation of Section 120.00-1 of the New York Penal Law. (County Def.'s 56.1 ¶ 10.) On January 20, 2010, plaintiff was found

guilty of robbery in the Second Degree and assault in the Third Degree after a jury trial. (*Id.* ¶ 11.) Under the doctrine of *Heck*, Pooler's criminal convictions bar any claim for false arrest.[12]

Pooler also claims that he was maliciously prosecuted by the County defendants for the robbery and assault of Alvarez on June 13, 2009. As discussed *supra*, plaintiff's criminal convictions bar any claim for malicious prosecution on those charges are barred by *Heck*. In order to establish a claim for malicious prosecution, the plaintiff must demonstrate that the subject proceeding was terminated in the plaintiff's favor. Here, since plaintiff was convicted of Robbery in the Second Degree and Assault in the Third Degree, he cannot demonstrate a favorable termination.

Accordingly, plaintiff's claims for false arrest and malicious prosecution cannot survive summary judgment.[13]

---

[12] In the alternative, the Village defendants argue that they are entitled to qualified immunity on plaintiff's false arrest claim because plaintiff was arrested after an eyewitness identification. (Village Def.'s Br. at 8-9; Village Def.'s Reply. Br. at 5-6.) The Court has already determined that this claim is without merit, and thus, the Court need not address whether the Village defendants are entitled to qualified immunity on the false arrest claim.

[13] The County defendants also argue that the claims for false arrest and malicious prosecution against DA Rice must be dismissed, in the alternative, because she is entitled to absolute immunity. (County Def.'s Br. at 12.) The Court agrees. The Second Circuit has long held that:

> Absolute immunity affords "complete protection from suit," *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives "public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities," *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987), so that they will not feel "constrained in making every decision by the consequences

## D. Excessive Force

Plaintiff also claims that his rights were violated because defendants Barnes and Almanzar used excessive force when arresting him.[14] In particular, plaintiff

---

> in terms of [their] own potential liability in a suit for damages," *Imbler v. Pachtman*, 424 U.S. 409, 424-25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature "is such that it 'accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action,'" *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Robinson v. Via*, 821 F.2d 913, 918 (2d Cir. 1987)), even where the challenged conduct was motivated by a wrongful motive or even malice*, Bernard v. County of Suffol*k, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

*In re NYSE Specialists Securities Litigation*, 503 F.3d 89, 95-96 (2d Cir. 2007). Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities, i.e., those acts "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, 96 S.Ct. 984, 47 L.Ed.2d 128; *see also Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001), but not for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128. Absolute prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, *see, e.g.*, *Kent v. Cardone*, 404 F. App'x 540, 542-43 (2d Cir. Jan. 5, 2011); *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006), or engages in administrative duties that are directly connected with the conduct of a trial, *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43, 129 S.Ct. 855, 861-62, 172 L.Ed.2d 706 (2009). Here, the challenged actions of DA Rice fall squarely within the scope of her prosecutorial capacities. Accordingly, plaintiff's claims against DA Rice are barred by absolute prosecutorial immunity. Thus, summary judgment must be granted in favor of DA Rice on this ground as well.

[14] It is unclear from plaintiff's complaint and opposition brief whether he has alleged an excessive force claim against Nassau County and the

asserts that the defendants used excessive force when: (1) during the course of his arrest, plaintiff was maced by Almanzar and Barnes; and (2) plaintiff was dropped on his lower back with his handcuffs on, causing severe pain.

Defendants argue that that they are entitled to summary judgment because the evidence demonstrates that excessive force was not used, and that any force used by the officers was objectively reasonable. For the reasons set forth below, the Court concludes that summary judgment in favor of defendants Barnes and Almanzar on the excessive force claim is unwarranted because there are disputed issues of fact, *inter alia*, as to whether defendants intentionally dropped plaintiff to the ground while handcuffed, thereby causing injury to his back. Moreover, qualified immunity at this stage is unwarranted because, if the officers intentionally dropped plaintiff on his back while handcuffed, qualified immunity would not apply to such conduct.

1. Legal Standard

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). More

specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis of an excessive force claim involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that the act cannot rise to a constitutional violation as a matter of law. *See, e.g.*, *Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 U.S. Dist. LEXIS 44658, at *11, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than *de minimis* force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer # 17969*, No. 99-CV-3964 (NRB), 2000 U.S. Dist. LEXIS 18521, at *5, 2000 WL 1877090 (S.D.N.Y. Dec. 27, 2000)

---

Hempstead Police Department. However, as discussed *supra*, plaintiff has failed to allege (or provide evidence of) a municipal policy, practice or custom resulting in a constitutional violation. Thus, to the extent plaintiff has brought a claim for excessive force against Nassau County or the Hempstead Police Department (or the Village of Hempstead), that claim cannot survive summary judgment.

(dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison*, 821 F.2d at 924-25); *see also Hayes v. New York City Police Dep't*, No. 06-CV-0595, 2006 U.S. App. LEXIS 32344, at * 1, 2007 WL 130332 (2d Cir. Jan. 16, 2007) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

## 2. Application

As noted above, plaintiff's claim of excessive force is based on two allegations: (1) during the course of his arrest, plaintiff was maced by Almanzar and Barnes; and (2) plaintiff was dropped on his lower back with his handcuffs on, causing severe pain.

With respect to the alleged use of mace, plaintiff states that he was maliciously sprayed with mace by Officer Almanzar in the face, and by Officer Barnes in the back of the head. (*See* Pl.'s 56.1 ¶¶ 20, 21). The affidavits from the officers do not directly address this allegation. With respect to plaintiff's back injury, plaintiff asserts that "[o]n June 13, 2009, Plaintiff was dropped on his 'Lower Back' with hand cuffs on cause severe pain and plaintiff request to see doctor, plaintiff was taken to N.C.M.C."

(Pl.'s 56.1 ¶ 8.) Plaintiff contends that this occurred as he was being pulled from the back seat of the car at the police station after his arrest. (Pl.'s Opp. at 33-34.) According to plaintiff, plaintiff was given 800mg of pain killers. (Pl.'s Opp. Br. at 23.) Plaintiff points to his questionnaire as evidence of the injury. (Pl.'s Ex. G, Village Def.'s Ex F.) In response, the Village Defendants argue, in a conclusory fashion, that excessive force was not used and, to the extent force was used, it was reasonable. In support, the Village defendants submit the affidavits of Barnes and Almanzar, in which both acknowledge chasing plaintiff, arresting plaintiff, and transporting him back to the Village of Hempstead Police Department for processing. On the issue of the use of any force, the officers state, "[t]he Plaintiff was not punched, kicked, or assaulted in any way." (Almanzar Affidavit, at ¶ 5; Barnes Affidavit, at ¶ 6.[15])

The Court concludes that, construing the evidence most favorably to plaintiff (as contained in his sworn pleading), there are genuine issues of fact that preclude summary judgment on the excessive force claim against defendants Almanzar and Barnes – namely, whether they used mace on plaintiff without justification, and then dropped him to the ground while handcuffed thereby causing a back injury.

The Court finds the defendants' arguments in favor of summary judgment to be unpersuasive. First, to the extent that the defendants suggest that any force that was used was objectively reasonable because plaintiff refused to stop for the officers and proceeded to run from the defendants

---

[15] The Court notes that the affidavits are not signed, nor notarized; rather, they simply contain a "/s/" on the signature line. However, even assuming *arguendo* that they were properly signed and notarized, they are insufficient to support summary judgment for the reasons discussed above.

(Village Defs.'s Br. at 7), that argument fails because that (1) the officers did not fully explain the circumstances surrounding their alleged use of force, and (2) the force with respect to his back injury allegedly occurred *after he was handcuffed* and arrived at the police station, and thus was unrelated to any flight by plaintiff prior to his arrest. The defendants further argue that "[t]o the extent that any physical contact resulted from the arrest of the Plaintiff, said contact was incidental and not injurious to the Plaintiff." (*Id.*) However, plaintiff's sworn statement, if credited, and all reasonable inferences are drawn in his favor, would allow a rational jury to conclude that the force – namely, spraying mace and dropping plaintiff to the ground while handcuffed – was not incidental. Moreover, although defendants contend that any force was "not injurious," plaintiff asserts that his back was injured by the force at the police station, that he was taken to the Nassau County Medical Center to see a doctor, and that he was prescribed a pain killer for his back.[16] Therefore, these arguments by the defendants do not support summary judgment on this claim given the plaintiff's version of the events, which are in dispute.

The defendants also argue that on the date of the arrest, the questionnaire indicates that plaintiff "fell down" and does not indicate that the Village defendants used excessive force. (Village Def.'s Reply Br. at 3; Village Def.'s Ex F.) Moreover, the defendants also rely on the plaintiff's pedigree information and photograph which they allege "[c]learly demonstrates that Plaintiff was not injured as a result of his arrest." (*Id.*; Village Def.'s Ex. I.) As a threshold matter, the Court notes that any injury to plaintiff's back would not be

visible in plaintiff's Pedigree Information photograph. In any event, to the extent that the questionnaire or other evidence in the record submitted by defendants may undermine plaintiff's version of the events, these credibility determinations cannot be resolved on summary judgment.

In sum, defendants Barnes and Almanzar have failed to meet their burden and demonstrate that there is no genuine dispute as to any material facts on the excessive force claim, and that they are entitled to judgment as a matter of law. Therefore, the Court denies summary judgment on this ground.

### E. Qualified Immunity

The Village defendants' qualified immunity argument focuses exclusively on the false arrest claim, not on the excessive force claim. *See* Village Defs.' Br. at 8-9 ("In the case at bar, the eyewitness who identified the Plaintiff was the victim of the robbery. Clearly, based upon the victim's identification of the Plaintiff[,] the Village Defendants had probable cause to arrest plaintiff. Based upon the above, the Village Defendants are entitled to qualified immunity."). However, in an abundance of caution, the Court treats the qualified immunity argument as also applying to the excessive force claim and concludes that there are genuine issues of material fact as to the excessive force claim that preclude summary judgment on qualified immunity grounds.

### 1. Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his

---

[16] As noted *supra*, the questionnaire does indicate that plaintiff was complaining that his back hurt and that he wanted to see a doctor for back pain.

conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 Fed. App'x 400, 401 (2d Cir. 2007) (explaining that government officers "are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (quotation marks omitted). In addition, the Second Circuit has repeatedly stated that qualified immunity only protects officials performing "discretionary functions." *See Simons v. Fitzgerald*, 287 Fed. App'x 924, 926 (2d Cir. 2008) ("'Qualified immunity shields government officials performing discretionary functions from liability for civil damages . . . .'" (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007))); *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 208 (D. Conn. 2005) ("'The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" (quoting *Lee v. Sandberg*, 136 F.3d 94, 100 (2d Cir. 1997))).

As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not

merely a defense, but is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Accordingly, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

With respect to the summary judgment stage in particular, the Second Circuit has held that courts should cloak defendants with qualified immunity at this juncture "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (quoting *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996)); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (citations and quotation marks omitted)); *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 356 (D. Conn. 2008) ("Here, the court finds that summary judgment on qualified immunity grounds is inappropriate. As the Second Circuit has held, [w]hen a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical. As noted above, there are issues of material fact in this case that this

court may not decide. These issues of fact are critical to determining whether [the defendant] was operating under a reasonable belief as to what kind of search he was permitted to conduct." (citation and quotation marks omitted)).

## 2. Application

Here, the Court examines qualified immunity with respect to plaintiff's surviving 42 U.S.C. § 1983 claim of excessive force. The Court concludes that defendants Barnes and Almanzar have failed to set forth undisputed evidence that establishes that they are entitled to qualified immunity; rather there are disputed issues of fact in this case that must be resolved in order to determine whether qualified immunity would be warranted. Accordingly, defendants' motion for summary judgment based on qualified immunity on the excessive force claim is denied at this juncture.

First, it is axiomatic that the right that plaintiff asserts – namely plaintiff's right under the Fourth Amendment to be free from excessive force – is clearly established. *See Maxwell*, 380 F.3d at 108.

Second, there are genuine issues of material fact that preclude the Court from determining as a matter of law that this clearly established right was not violated. The critical question is whether it was objectively reasonable for defendants Barnes and Almanzar to believe that they were not committing such a violation. However, as discussed above, there is a factual dispute as to whether defendants intentionally dropped plaintiff to the ground while he was handcuffed, thereby causing injury, as well as whether they gratuitously maced plaintiff. Given that disputed factual issue, the Court declines to so conclude as a matter of law that it was objectively reasonable for

defendants to believe they were not violating plaintiff's rights. For example, if plaintiff's version of the facts is accepted and all reasonable inferences are drawn in his favor, it would not have been objectively reasonable for defendants to gratuitously mace plaintiff without justification, and drop him to the ground while handcuffed.

In short, there are disputed factual issues as to the defendants' conduct relevant to the determination of whether it was objectively reasonable for defendants to believe their alleged acts were lawful, and those factual issues preclude summary judgment on qualified immunity grounds. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 754 (5th Cir. 2005) (denying qualified immunity on excessive force claim relating to alleged slamming of police car door on plaintiff's foot and head, and noting that "under [plaintiff's] version of events it is not clear as a matter of law that [the police officer] acted reasonably in slamming the doors on [plaintiff]. At a minimum, determining whether [the police officer's] conduct was objectively reasonable requires factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment stage.") (quotations and citations omitted); *see also Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 812 (D.N.J. 2008) (denying qualified immunity on excessive force claim where plaintiff alleged that officer twisted arrestee's arm and slammed his head into a door while escorting him across police station lobby, and concluding: "This is not an allegation of an accidental bump or bruise inflicted in the course of effecting an arrest and, further, if Plaintiff's allegations are true, [the police officer's] actions were not truly taken in the course of effecting Plaintiff's arrest. Rather, running Plaintiff into the door and twisting his arms constituted a separate, independent course of conduct, serving no purpose other than to inflict discomfort and pain. This is not the

hazy border between excessive and acceptable force." (quotations and citations omitted)); *Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) ("[I]t could not be objectively reasonable for [the officer] to have believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law."); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 402 (S.D.N.Y. 2005) ("In the case at bar, there is an issue of fact surrounding the circumstances of the alleged excessive force. [Plaintiff] maintains that he was purposely slammed into walls by the COs on the way to the mental health unit, while defendants maintain that if [plaintiff's] body did bump into any walls, it was an accident because the COs were merely slipping on water that was on the floor as a result of the broken sprinkler. These factual issues preclude summary judgment on the defense of qualified immunity.")

Accordingly, summary judgment on qualified immunity grounds is unwarranted as to the excessive force claims against defendants Barnes and Almanzar.[17]

---

[17] The Court notes that, in order to determine the availability of the qualified immunity defense in this case at trial, the Court is prepared to follow the procedures set forth by the Second Circuit in *Zellner v. Summerlin*, 494 F.3d 344, 367-68 (2d Cir. 2007). Specifically, although "the ultimate question of whether it was objectively reasonable for [defendants] to believe that [their] conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court," *id.* at 368, the jury must first "resolve[] any disputed facts that are material to the qualified immunity issue." *Id.* Further, "[t]o the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question." *Id.* (citations omitted) (noting that "if the defendant does not make such a request,

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Village defendants' motion for summary judgment with respect to the plaintiff's excessive force claim against Almanzar and Barnes. The Court grants the Village defendants' motion for summary judgment with respect to all other claims. In addition, the Court grants the County defendants' motion for summary judgment in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     September 14, 2012
          Central Islip, NY

* * *

Plaintiff is proceeding *pro se*. The County defendants are being represented by Pablo A. Fernandez of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501. The Village defendants are being represented by Keith Michael Corbett of Harris Beach PLLC, 100 Wall Street, 23rd Floor, New York, NY 10005.

---

he is not entitled to have the court, in lieu of the jury, make the needed factual finding"). In particular, "'the jury should decide these issues on special interrogatories.'" *Id.* (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990)). Once the jury has determined these factual issues, the Court will – if necessary – afford defendants an additional opportunity to renew their motion with respect to qualified immunity. *See, e.g.*, *Zellner*, 494 F.3d at 364.